IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CT-3062-BO

| | |
|---|---|
| ROBERT LEWIS,<br>  Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R |
| | ) |
| LIEUTENANT DIGGS, et al.,<br>  Defendants. | )<br>)<br>) |

Robert Lewis, a former state inmate and plaintiff in this action, filed a civil rights case pursuant to 42 U.S.C. § 1983.[1] On October 19, 2012, the matter was allowed to proceed after the 28 U.S.C. § 1915 review. Defendants are now before the court with a motion to dismiss for failure to state a claim [D.E. 22]. Plaintiff was given notice, however, he did not file a response. Plaintiff did file a motion to amend [D.E. 25] which is allowed and considered. In this posture, the matter is ripe for determination.

## ISSUES

Plaintiff alleges religious violations against defendants, Lieutenant James Diggs and Sergeant Garry Bleeker. Plaintiff's complaint stems from a May 28, 2011 search of his dread locks.

## FACTUAL OUTLINE

Plaintiff's Statement of Claim, in its entirety, is as follows:

---

[1] Plaintiff was in the custody of the North Carolina Department of Public Safety, Division of Adult Correction when the suit was originally filed on March 14, 2012. He has since been released. http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0666952&searchLastName=lewis&searchFirstName=robert&listurl=pagelistoffendersearchresults&listpage=1 (last visited June 10, 2013).

> On Saturday May 28th, 2011, Lieutenant Diggs authorized Sgt. Bleeker to come to the segregation unit where I'm presently housed, so he (Sgt. Bleeker) could conduct a search of my dreadlocks, by telling me to pull my dreadlocks apart (hair). I ran my fingers through my dread locks, in compliance, instead. C/O Chris Howard, C/O Rose and Sgt. Langston were present. I then voluntarily let Sgt. Langston search my dread locks (hair).

Compl. at 4.

The administrative remedy investigation attached to plaintiff's complaint explains that plaintiff was suspected of concealing contraband on his person or in his dread locks. Compl., Attach. 1, 5-6. As a result, plaintiff was taken to a holding cell for search in accordance with NCDPS Policies and Procedures. Compl., Attach. 1 at 5-6. During the ensuing search, plaintiff was ordered to run his fingers through his hair, and was shown the section of the Religious Policy dealing with the Rastafarian religion. Id. The investigative report states that plaintiff initially refused to cooperate; however, plaintiff stated that he ran his fingers through his dread locks as an alternative. Compl. at 4, Attach. 1 at 5-6. Further, plaintiff states, and the investigative report supports, that plaintiff then voluntarily let a female officer search his dread locks. Id. Plaintiff attaches as exhibits and evidence the administrative remedy paper work himself. No where in his filings does he dispute their contents, nor does he respond to defendants' motion to dismiss.

## DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that

2

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Thus, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 557).

B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Mem. Supp. Mot. Dismiss 8–9. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Pearson v. Callahan, 555 U.S. 223, 231–32 (2009).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 555 U.S. at 232; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010), cert. denied, 131 S. Ct. 392 (2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009), cert. denied, 130 S. Ct. 1137 (2010); Miller v. Prince George's Cnty., Md., 475

3

F.3d 621, 626–27 (4th Cir. 2007). First, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (alterations omitted) (quotation omitted). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. Courts have discretion to decide which prong to address first. Pearson, 555 U.S. at 236. Thus, defendants are entitled to dismissal on qualified immunity grounds if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

C.  First Amendment or RLUIPA

The Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-

4

5(7)(A). Under RLUIPA, a plaintiff bears the burden of demonstrating that defendants imposed a substantial burden on the exercise of his religion. See 42 U.S.C. 2000cc-2(b); Gladson v. Iowa Dept. of Corrections, __ F.3d __, __, 2009 WL 36813, *5 (8th Cir. Jan. 8, 2009); Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006); Adkins v. Kaspar, 393 F.3d 559, 567 n.32 (5th Cir. 2004). The burden then shifts to the defendants to demonstrate that the substantial burden furthers a compelling governmental interest and does so by the least restrictive means. See Lovelace, 472 F.3d at 182. Furthermore, a court must give due deference to the experience and expertise of prison officials and may not substitute its judgment in their place, unless the inmate proves by substantial evidence that officials have exaggerated their response to the security considerations. Van Wyhe v. Reisch, 581 F.3d 639, 650 (8th Cir. 2009); Hoevenaar v. Lazaroff, 422 F.3d 366, 371 (6th Cir. 2005); and Murphy v. Mo. Dept. of Corr., 372 F.3d 979, 987 (8th Cir. 2004).

Likewise, plaintiff has the right to practice religion under the protections of the First Amendment while incarcerated. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, the right again is not without limits. Id.; see also Thornburgh v. Abbott, 490 U.S. 410, 415 (1989); Turner v. Safley, 482 U.S. 78, 85 (1987). The North Carolina Department of Correction ("DOC") has a compelling governmental interest in maintaining security, discipline, and order. See McRae v. Johnson, 261 Fed. Appx. 554, 558 (4th Cir. 2008) (per curiam) (unpublished); Hines v. South Carolina Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998).

In the case at hand, plaintiff argues about the search of his dread locks on Saturday, May 28, 2011, and its affront to the Rastafarian Code and Laws. The court shall assume without deciding that the first prong of the test is met. However, defendants have clearly shown that the

5

substantial burden, or the search, furthers the compelling interest of maintaining security, discipline, and order, and a voluntary search of the dead locks was the least restrictive measure to ensure this security. Specifically, plaintiff was suspected of hiding contraband in his dread locks. It is clear that such a situation is a security concern. Plaintiff states that in compliance with the request to search his dead locks for contraband, he first ran his fingers through his hair, and thereafter voluntarily agreed to have Sgt. Langston conduct the search. Any alleged search appears to comport with the governmental interest in maintaining security, discipline, and order. Furthermore, the search was agreed to by plaintiff. Clearly, the search of the dread locks thought to be hiding contraband was the least restrictive means by which to determine if plaintiff was actually concealing contraband therein. Qualified immunity thus shields all defendants from liability.

Accordingly, plaintiff's motion to amend [D.E. 25] is ALLOWED and considered in this court order. Defendants' motion to dismiss [D.E. 22] is GRANTED, the claims are DISMISSED, and the Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this _10_ day of June 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE